

The following constitutes
the order of the court. Signed February 11, 2014

_____
Charles Novack
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

| In re: | Case No. 13-51100 CN |
|---|---|
| JOSEPH GUERRA, | Chapter 7 |
| Debtor. | **MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT** |

On January 22, 2014, this court conducted a hearing on Joseph Guerra's motion for summary judgment to dismiss the involuntary petition filed against him by creditors Robert Ortega and Gabriel Cancino. Guerra contends that neither Ortega nor Cancino is a qualifying creditor under Bankruptcy Code § 303(b)(1), since their claims are subject to a bona fide dispute as to liability or amount. All appearances were made on the record. After conducting the hearing, this court ordered the parties to submit additional memoranda of law and declarations, which were timely filed. For the reasons stated below, Guerra's motion for summary judgment is granted.

Bankruptcy Code § 303 authorizes certain creditors to file an involuntary Chapter 7 or 11 bankruptcy against a person. Given the drastic nature of such a petition, the Bankruptcy Code narrowly defines who may initiate an involuntary filing. Bankruptcy Code § 303(b)(1) requires that each petitioning creditor be a "holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount...."  Only two creditors filed

this involuntary petition, and as such, §303(b)(2) further provides that the petitioning creditors "hold in aggregate at least $14,435 of such claims...."

Guerra contends that neither petitioning creditor was qualified to file this involuntary, as bonafide disputes exist as the amount of their claims and his liability under these claims. To determine whether a bona fide dispute exists under § 303, "[a] bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much." *In re Vortex Fishing Systems, Inc.,* 277 F.3d 1057, 1064 (9th Cir. 2002). A claim is subject to a "bona fide dispute," and thus acts to disqualify a creditor from joining in an involuntary petition, if there is an objective basis for either a substantial factual or legal dispute as to the validity of claim; it was not the intention of Congress that a debtor be able to avoid bankruptcy by merely disputing the existence or amount of claim. *In re Paper I Partners, L.P.*, 283 B.R. 661, 676 (Bankr. S.D. N.Y. 2002). "([I]f there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed."[citations omitted.] *Vortex* at 1064. This court is not required to resolve any such dispute. Instead, the court may address the merits of dispute and conduct a limited analysis of legal issues to ascertain whether an objective legal basis for the dispute exists. *In re TPG Troy, LLC,* 492 B.R. 150, 157 (Bankr. S.D. N.Y. 2013).[1]

This court also must examine this issue in the context of a summary judgment motion. The summary judgment standard under Federal Rule of Bankruptcy Procedure 7056 is well established. A party is entitled to summary judgment if the movant shows that there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. In this instance, summary judgment is appropriate if there is no dispute that bonafide disputes exist regarding liability or the amounts sought by the petitioning creditors.

The involuntary petition against Joseph Guerra was filed on February 27, 2013, and two

---

[1] The petitioning creditor bears the burden of establishing a prima facie case that no bona fide dispute exists. *See In re Green Hills Development Company, LLC*, 2014 U.S. App. LEXIS 2045 (5th Cir. February 3, 2014).

2

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 2 of 10

petitioning creditors signed the petition. The court first addresses the claim of petitioning creditor Gabriel Cancino. Cancino described his claim on the involuntary petition as a "judgment" for $238,306.85. Cancino, however, was not the plaintiff who obtained the judgment in question. Instead, on February 26, 2013, one day before the involuntary was filed, Gilbert Anaya (the plaintiff in question) assigned to Cancino a $190,000 arbitration award that he had obtained against Guerra. This court presumes that the difference between the $190,000 award and the judgment amount listed on the involuntary petition is the interest that accumulated on the arbitration award (which was later confirmed by the Superior Court).

The origins of the arbitration award are as follows: On or about June 6, 2006, Gilbert Anaya sued Joseph Guerra (among others) in Stanislaus County Superior Court, Case No. 380884 ("the Stanislaus Action"). The parties did not provide this court with any evidence regarding the nature of the dispute. Pursuant to an arbitration agreement dated March 24, 2004, Anaya's claims against Guerra (and a third party, Curtis Guerra) were submitted to arbitration. On July 9, 2010, arbitrator Ron Kelley entered an arbitration award of $190,000 in Anaya's favor and against Joseph Guerra and Curtis Guerra.

Anaya thereafter filed a Chapter 7 bankruptcy in the Eastern District of California. Anaya was represented in his Chapter 7 bankruptcy by Richard Hyppa, who by no mere coincidence also filed the involuntary petition at issue herein. In December 2012, Anaya filed a motion to compel the chapter 7 trustee to abandon his interest in the arbitration award, which motion was granted by the bankruptcy court on January 18, 2013. Shortly thereafter, Anaya, again represented by Hyppa, moved the Stanislaus County Superior Court to confirm the arbitration award, which it did on February 15, 2013. Eleven days later, on February 26, 2013, Anaya assigned all of his interest in the arbitration award to petitioning creditor, Gabriel Cancino, as assignee. Hyppa represented one or both of the parties in this transaction.

The arbitration award notwithstanding, Anaya was also a defendant in the Stanislaus Action. An entity called Caramba LLC, and Esquiel Garcia successfully litigated causes of action against Anaya, and on May 17, 2011, the Stanislaus County Superior Court entered two judgments against Anaya: an $83,473.85 judgment in favor of Caramba, LLC, and a $175,396.70 judgment in favor of Esquiel

3

Garcia. On June 1, 2011, Caramba, LLC assigned its judgment against Anaya to Joseph Guerra. On February 3, 2012, Garcia also assigned his judgement to Joseph Guerra. On February 28, 2013, the bankruptcy court in Anaya's Chapter 7 case entered his discharge, rendering the Caramba LLC and Garcia judgments - now owned by Joseph Guerra - unenforceable.

Guerra argues that the Caramba/Garcia judgments assigned to him cancel out the Anaya arbitration award assigned to Cancino, leaving Cancino without a bonafide claim against him under § 303. This court disagrees with this analysis. First, the fact that a debtor has an offsetting claim against a petitioning creditor does not create a bonafide dispute as to *liability*. "[Section 303] is not concerned with who ultimately owes money to whom; rather, it is concerned with whether the creditor's claim is disputed." *In re Seko Investment, Inc.*, 156 F.3d 1005, 1007 (9th Cir.1998). Cancino's claim is based on a confirmed arbitration award. Hence, there is no dispute as to Guerra's *liability*.

Guerra alternatively contends that his assigned judgments act as set-offs against the arbitration award, which creates a bonafide dispute as to the *amount* of Cancino's claim (indeed, Guerra's judgments substantially exceed Cancino's arbitration award). This court also disagrees with this analysis. As the Ninth Circuit painstakingly made clear in *In re Seko Investment*, §303 focuses narrowly on the claim presented by the petitioning creditor almost to the exclusion of any setoff rights the debtor may have. In *Seko*, the corporate debtor borrowed $750,000 from two lenders, and secured the loans with real property. Chicago Title issued separate title insurance policies to Seko and the lenders. A few years later, an unrelated third party claimed title to the real property, and accused Seko of forging the title documents. Seko thereafter stopped making its loan payments. The lenders tendered a demand on their title insurance policies, which Chicago Title promptly settled. In return, the lenders assigned their notes to Chicago Title, which immediately sued Seko for non-payment. Seko then counterclaimed to enforce its own title insurance policy, which Chicago Title refused to honor.

Chicago Title thereafter filed an involuntary petition against Seko, contending that the assignment of the two secured notes made it a holder of an undisputed claim. Seko moved to dismiss the involuntary petition on the ground that there was a bona fide dispute under § 303(b)

4

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 4 of 10

since its counterclaim offset any liability it had under the notes.

While the bankruptcy court agreed with Seko and dismissed the case (which dismissal was affirmed by the BAP), the Ninth Circuit disagreed and reversed. "Seko claims that it has raised a bona fide dispute because it has a separate claim against Chicago Title that, if found to be valid, would completely offset Chicago Title's claim against it. But the statute is not concerned with who ultimately owes money to whom; rather, it is concerned with whether the creditor's claim is disputed. Although there may be a dispute regarding who ultimately owes money to whom, Seko has not really disputed the validity of the *claim* filed by Chicago Title. Instead, it contends that its counterclaim against Chicago Title, if successful, could yield enough money to cancel out its debt on the notes. But if the two lenders had not assigned their notes to Chicago Title, there would be no dispute as to the validity of their claims and their concomitant ability to file an involuntary petition. We see no reason the result should differ merely because the claims now belong to an entity against which Seko alleges it has a claim." *Ibid*.

The Ninth Circuit further held that only counterclaims arising from the same transaction could be used to offset a petitioner's claim amount and perhaps reduce it belong the aggregate amount required by § 303(b). "The practice of netting out the claims of debtors and their creditors only makes sense when a counterclaim for recoupment on a creditor's claim is involved. Such a counterclaim arises only out of the same transaction which forms the basis of the creditor's claim, and not when the counterclaim originates in a separate transaction." [citations omitted.] *Ibid.*[2]

Guerra's setoff argument does not satisfy this test. The original parties to the Caramba/Garcia judgments differ from the original parties to Anaya's arbitration award, and thus they do not arise from the same transaction (or at least there are no facts demonstrating this). The

---

[2] While the *Seko* court analyzed a prior version of § 303(b), the amendment to § 303(b) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 does not alter the Ninth Circuit's fundamental approach to whether an offsetting claim creates a bonafide dispute as to amount. If the debtor's claim does not arise from the same transaction, the amount of a creditor's claim is not in dispute. *See In re Regional Anesthesia Associates PC*, 360 B.R. 466, 469-70 (Bankr. W.D.Pa. 2007); *In re Euro-American Lodging Corp.*, 357 B.R. 700 (Bankr. S.D.N.Y. 2007). Guerra's analysis of what a set-off is under California law does not alter the Bankruptcy Code's meaning of a bona fide dispute.

5

fact that Anaya's claim was subject to arbitration and Caramba LLC and Garcia's claims were not strongly suggest that they did not arise from the same transaction. Guerra therefore cannot argue that there is a bona fide dispute as to amount of Cancino's claim.[3]

This court rejects Cancino's claim, however, for perhaps a more fundamental reason: Cancino obtained his claim for the sole purpose of filing this involuntary petition, and as such he is not a qualified petitioner. Federal Rule of Bankruptcy Procedure 1003 provides in pertinent part that "A transferor or transferee of a claim shall annex to the original and each copy of the petition a copy of all documents evidencing the transfer . . . and a signed statement that the claim was not transferred for the purpose of commencing the case and setting forth the consideration for and terms of the transfer. An entity that has transferred or acquired a claim for the purpose of commencing a case for liquidation under chapter 7 or for reorganization under chapter 11 shall not be a qualified petitioner." Rule 1003 endeavors to curtail "trafficking" in claims . . . without Rule 1003, such trafficking could enable entities without proper claims to acquire them and thus become petitioning creditors . . . " *In re Focus Media, Inc.,* 378 F.3d 916, 927-928 (9th Cir. 2004). While the involuntary petition contains a "check the box" statement that Cancino did not acquire his claim for the purpose of filing the involuntary petition, the undisputed facts surrounding his acquisition of the arbitration award indicate otherwise. See *In re Pacific Rollforming, LLC*, 415 B.R. 750 (Bankr. N.D.Cal.2009).[4] Cancino has provided this court with a convoluted and winding explanation regarding why he purchased Anaya's arbitration award. When distilled to its essence, Cancino, who had loaned Anaya funds over the years, purchased Anaya's arbitration award for five thousand

---

[3] Cancino contends that Anaya's Chapter 7 discharge fully undermines Guerra's setoff argument, since his assigned judgments were discharged. Anaya's discharge was entered on February 28, 2013, the day after the involuntary was filed. The date for determining the bonafides of a petitioning creditor's claim is the petition date, which was the day before Anaya received his Chapter 7 discharge.

[4] While Guerra did not raise this issue, Federal Rule of Bankruptcy Procedure 7056(f)(2) authorizes this court to grant a summary judgment on grounds not raised by a party so long as it gives the affected party notice and a reasonable time to respond. This court raised this issue during the January 14, 2014 hearing, and provided Cancino with sufficient time to respond to this issue. Cancino filed a supplemental declaration and memoranda of law, which this court has reviewed and considered.

6

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 6 of 10

dollars and intended to enforce the award to collect Anaya's debt to him. The involuntary petition was the mechanism he chose to collect that debt. On February 26, 2013, Anaya assigned his arbitration award to Cancino. Richard Hyppa is the attorney who prepared the assignment, and one day later, he filed this involuntary petition. The court therefore draws the following, inexorable conclusions: Cancino retained Hyppa to file this involuntary before the assignment (what attorney would file an involuntary on less than a day's notice), the arbitration award allowed Cancino to act as a petitioning creditor, and Hyppa then filed the involuntary petition. This horse trading is exactly what Rule 1003 was meant to prohibit. As such, Cancino is ineligible to act as a petitioning creditor.[5]

Robert Sanchez Ortega ("Ortega") is the second petitioning creditor, and he values his claim at $337,850. The involuntary petition describes his claim as "Loan Fraud." The petition contains no additional description, documentation, or any other evidence regarding Ortega's claim.

On March 8, 2013, the petitioning creditors filed an "Emergency Motion to Appoint Trustee." Ortega filed a supporting declaration in which he stated that his claim arose when he was fraudulently induced to refinance his San Jose residence in 2007.[6] Ortega asserted that in 2005, Raul Chairez and he owned the Ramona Property as joint tenants, and that the Ramona Property subsequently was transferred in and out of a trust and ultimately re-vested in his name alone. Ortega stated that in 2006, Guerra asked him for an investment or a loan to "improve" certain real property that Guerra owned in Los Gatos, California. Guerra told Ortega that they would be equal partners in the venture, and that Guerra would repay the funds within six months of completing the "improvements." Ortega claims that he rejected Guerra's offer. Nevertheless, at some point following Guerra's offer, the declaration stated that Guerra and Ortega visited a Wells Fargo branch in Santa Clara County to inquire about obtaining a loan secured by the Ramona Property. At some

---

[5] The court also notes that while the assignment attached to the petition unequivocally indicates that Cancino took full and complete title to the arbitration award, Cancino's supplemental declaration states that he intended to split the proceeds collected with Anaya.

[6] Ortega stated that he resided at 1040 Ramona Avenue, San Jose, CA (the "Ramona Property").

7

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

point between February 16, 2007 and February 27, 2007, Ortega received a $150,000 loan from Wells Fargo, secured by the Ramona Property. Ortega stated in his declaration that all of the loan documents "were not signed by me voluntarily, but only upon the request of Joe Guerra." Ortega claimed that he only received $20,000 of the loan proceeds, while Guerra received $142,850 of the proceeds. Ortega did not explain why or how Guerra received these loan proceeds.

Ortega's declaration further asserted that in September 2007 he returned to Wells Fargo and refinanced the February 2007 loan by borrowing $350,000. Part of the September 2007 loan was used to satisfy the February 2007 loan. He further stated that he did not receive any of the excess loan proceeds. Instead, his declaration asserted that on September 25, 2007, Guerra received $195,000 of the loan proceeds in the form of a cashier's check. Ortega asserted that the September 2007 loan fell into default, and that Wells Fargo thereafter commenced foreclosure proceedings. This declaration did not offer any further explanation regarding the nature of Ortega's claim nor how he calculated the $337,850 amount. This declaration is dated March 4 2013.

Ortega also filed a declaration in opposition to this motion for summary judgment, dated December 30, 2013. This declaration significantly departs from his March 2013 declaration. Ortega now claims that Guerra impersonated him in order to obtain both the February and September 2007 Wells Fargo loans. Ortega asserts under penalty of perjury that Guerra established a bank account in Ortega's name and issued checks from this account by forging Ortega's signature. Apparently, Ortega himself was the recipient of certain of these forged checks. Ortega further states that Guerra used the September 2007 loan to fund a $195,000 cashier's check payable to Guerra. Finally, Ortega claims that he first learned of the February and September 2007 loans in late 2010 or early 2011 when he received a telephone call from Wells Fargo that the September 2007 loan was in default.

While Guerra's motion for summary judgment argues that Ortega's claim is barred by the applicable statute of limitations (and thus in bonafide dispute), this court has broader, and perhaps more basic concerns. Ortega's own declarations create a bonafide dispute regarding the nature and validity of Ortega's claim. Ortega's March 2013 description of his claim for relief is wholly at odds with how his December 2013 describes his claim against Guerra. It is Ortega's obligation to provide this court with some evidence establishing that there is no dispute regarding his claim, and his own

8

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 8 of 10

declarations have created a bonafide dispute as to its exact nature.

Guerra also convincingly argues that there is a bonafide dispute regarding the timeliness of Ortega's claim. The Ninth Circuit has held that if a claim is barred by a statute of limitations, such claim is subject to a bona fide dispute under § 303(b). *Vortex* at 1070. *See also In re Elverson,* 492 B.R. 831, 843 (Bankr. E.D.Pa. 2013). Guerra first argues that if Ortega has a claim, it is a contract claim for an agreement that is not in writing. Guerra testified at his deposition that he borrowed the Wells Fargo funds from Ortega in 2007, and promised to repay the money when he completed the construction on his Los Gatos property. Under California Code of Civil Procedure §339, such a claim must be brought within two years from the breach. The facts are not clear, however, when the breach occurred (since there is no evidence regarding when or if Guerra completed the construction). Ortega, however, asserts that he has a fraud claim, and there is a legitimate dispute - again, created by his own declarations - regarding whether this claim is time-barred. Ortega states in his March 2013 declaration that he was aware of both Wells Fargo loans when they were made in 2007. If Ortega was defrauded, the applicable statute of limitation is three years under California Code of Civil Procedure §338(d), and such claims begin to accrue when the aggrieved party discovers the facts constituting the fraud. There is certainly a bonafide dispute regarding when Ortega unearthed this fraud. Ortega stated under penalty of perjury (in March 2013) that he was aware of the loans in 2007, since he signed them under duress and knew that Guerra had received the bulk of the loan proceeds. The involuntary petition was filed more than four years after Wells Fargo funded the September 2007 loan. There thus is a substantial dispute regarding whether Ortega's claim is barred by the applicable statute of limitations.

Accordingly, this court grants Joseph Guerra's motion for summary judgment, and he is ordered to submit an appropriate order.[7]

**\* \* \* END OF ORDER \* \* \***

---

[7] Guerra's supplemental memorandum of points and authorities and request for judicial notice advance various, speculative notions regarding why this involuntary petition was filed. For purposes of this motion, this court need not entertain his conspiracy theories.

9

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 9 of 10

Case No. 13-51100 CN

**COURT SERVICE LIST**

Joseph Guerra
15439 National Ave.
Los Gatos, CA 95032

10

**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
Case: 13-51100    Doc# 134    Filed: 02/11/14    Entered: 02/12/14 15:24:38    Page 10 of 10